**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

Teal Petals St. Trust,

               Plaintiff,

    v.

NewRez, LLC fka New Pen Financial dba
Shellpoint Mortgage Servicing, et al.

               Defendants.

And related counterclaims.

---

NewRez, LLC fka New Penn Financial dba
Shellpoint Mortgage Servicing,

               Plaintiff,

    v.

Iyad Haddad aka Eddie Haddad; Resources
Group, LLC; Resources Group, LLC as
Trustee of Teal Petals St. Trust; 9863 Dublin
Valley, LLC; Saticoy Bay LLC dba Saticoy
Bay LLC Series 9863 Dublin Valley St.;
Saticoy Bay LLC Series 9863 Dublin Valley
St.; et al.,

               Defendants.

Case No. 2:22-cv-00395-JAD-DJA

**Order**

## Background[1]

This case is a remnant of Nevada's foreclosure crisis in which real estate investors like Iyad Haddad and his numerous entities snapped up homes for pennies on the dollar after the owners defaulted on their homeowner-association ("HOA") assessments. At the center of this

---

[1] These facts are derived from prior orders and the complaints in these consolidated cases and are not intended to be findings of fact.

1   case is the home at 9863 Dublin Valley Street, which Haddad's Dublin Valley Street Trust (Teal

2   Petals Street Trust's predecessor in interest) bought for just $7,700 at an HOA foreclosure sale.

3   The home had been purchased five years earlier with a $340,000 mortgage secured by a deed of

4   trust.

5       Years of quiet-title litigation in separate suits ended in the determination that the property

6   was bought subject to that deed of trust.  But when NewRez LLC fka New Penn Financial dba

7   Shellpoint Mortgage Servicing took steps to foreclose on that long-unpaid mortgage in 2022, two

8   things happened.  First, Teal Petals Street Trust filed a second-generation lawsuit (which

9   Shellpoint removed to this Court) theorizing that the deed of trust was extinguished in 2020 by

10  operation of Nevada's ancient-lien statute.  *Teal Petals St. Trust v. NewRez, LLC fka New Penn*

11  *Financial dba Shellpoint Mortgage Servicing*, Case No. 2:22-cv-00395-JAD-DJA (D. Nev.) (the

12  "*Teal Petals* Action").  Second, Haddad transferred the property to a new entity—9863 Dublin

13  LLC—which promptly filed for bankruptcy protection, delaying Shellpoint's foreclosure for more

14  than a year.  When the sale finally went forward, a different Haddad entity—Saticoy Bay LLC

15  Series 9863 Dublin Valley St.—purchased the property at a steep discount.  In response,

16  Shellpoint filed a federal action alleging various claims, including, amongst others, claims for

17  quiet title, unjust enrichment, abuse of process, alter ego, and civil aiding and abetting.  *NewRez,*

18  *LLC fka New Penn Financial dba Shellpoint Mortgage Servicing v. Iyad Haddad*, Case No. 2:23-

19  cv-01839-JAD-DJA (D. Nev.) (the "*NewRez* Action").

20      The Honorable District Judge Jennifer A. Dorsey granted in part and denied in part

21  Haddad's (and his entities') motion to dismiss in the *NewRez* action.  *See New Rez* Action, at

22  (ECF No. 45).  In doing so, she allowed Shellpoint's claims for quiet title, unjust enrichment, and

23  abuse of process to go forward and construed Shellpoint's claims for alter ego and civil aiding

24  and abetting not as stand-alone claims, but as theories of liability.  The *NewRez* Action and the

25  *Teal Petals* Action were consolidated on August 27, 2024 under the *Teal Petals* Action.  *See Teal*

26  *Petals* Action, at (ECF No. 69).

27      Now, allegedly Haddad-controlled entities Resources Group, LLC; Resources Group,

28  LLC as Trustee of Teal Petals St. Trust; and 9863 Dublin Valley, LLC move for a protective

1    order preventing them from responding to requests for production, interrogatories, and requests

2    for admissions that Shellpoint served on them.  (ECF No. 71).  These entities also move to stay

3    discovery regarding certain discovery requests and to extend time to respond to others.  (ECF

4    Nos. 72, 73).  Haddad and other allegedly Haddad-controlled entities Saticoy Bay, LLC; and

5    Saticoy Bay, LLC 9863 Dublin Valley St. have joined these briefings.  (ECF Nos. 74, 75, 76,

6    103, 104, 106).  For the sake of simplicity and for the purposes of this order only, the Court refers

7    to Resources Group, LLC; Resources Group, LLC as Trustee of Teal Petals St. Trust; 9863

8    Dublin Valley, LLC; Saticoy Bay, LLC; Saticoy Bay, LLC 9863 Dublin Valley St.; and Haddad

9    collectively as the "Haddad Entities."[2]

10        Shellpoint countermoves to compel the Haddad Entities to respond to its discovery

11   requests.  (ECF No. 90).  It also counter-moves for a protective order to govern the parties'

12   exchange of information after it did not get a response from the Haddad Entities regarding a

13   stipulated protective order.  (ECF No. 91).  Later, however, the parties stipulated to the terms of a

14   protective order, mooting the countermotion for one.  (ECF No. 118).

15        Although the Court originally set these motions for a hearing, they have now been fully

16   briefed and the Court finds a written order more appropriate here.  The Court will thus decide the

17   motions filed at ECF Nos. 71, 72, 73, 90, and 91 in written orders.  The Court leaves the issues of

18   Shellpoint's countermotion for attorneys' fees (ECF No. 93), Saticoy Bay, LLC 9863 Dublin

19   Valley St.'s motion for protective order regarding an inspection of the property (ECF No. 108),

20   and Shellpoint's countermotion to compel that inspection (ECF No. 112) for the hearing

21   scheduled November 25, 2024.

22        Because the Court finds that the Haddad Entities have not carried their burden of showing

23   why Shellpoint's discovery should not be allowed, it denies their motion for protective order and

24   to stay discovery.  (ECF Nos. 71, 72).  However, the Court grants the Haddad Entities' motion to

25   extend time to respond to Shellpoint's discovery requests.  (ECF No. 73).  Because the Court

26

27   _____

28   [2] The Court derives the associations between the Haddad Entities from Shellpoint's complaint in
     the *NewRez* Action.  (*NewRez* Action at ECF No. 1).

1    finds that Shellpoint has carried its burden of showing that its requests are relevant, but that the

2    Haddad Entities have not carried their burden of showing why Shellpoint's discovery should not

3    be allowed, the Court grants Shellpoint's countermotion to compel.  (ECF No. 90).  Because the

4    parties have filed a stipulated protective order, the Court denies Shellpoint's countermotion for a

5    protective order as moot.  (ECF No. 91).  The Court will address the parties' stipulated protective

6    order in a separate order.  (ECF No. 118).

7                                              **Discussion**

8         Through their briefings, the Haddad Entities seek a protective order preventing them from

9    responding to Shellpoint's discovery requests and staying or bifurcating Shellpoint's discovery

10   pending the Haddad Entities' forthcoming motion for summary judgment because they argue that

11   the discovery is irrelevant and disproportional.  (ECF Nos. 71, 72, 73, 96, 98, 100, 101).

12   According to the Haddad Entities, Shellpoint's discovery is aimed entirely at supporting its alter

13   ego and aiding and abetting theories of liability.  (ECF No. 71 at 9).  The Haddad Entities claim

14   that this discovery is irrelevant because Judge Dorsey found alter ego and aiding and abetting to

15   not be stand alone claims but to be theories of liability.  (ECF No. 98 at 8).  And they claim that

16   Shellpoint's theories will ultimately be unsuccessful.  (*Id.* at 11-14).  The Haddad Entities assert

17   that the discovery is disproportional because the information it seeks is "voluminous."  (ECF No.

18   71 at 11).  In lieu of responding to discovery, the Haddad Entities propose posting a bond of

19   $240,000.00.  (ECF No. 71 at 14).  They claim that because Shellpoint's discovery really seeks to

20   determine which parties are liable for Shellpoint's alleged damages, discovery is unnecessary if

21   the Haddad Entities "provide a ready source for obtaining any damages without the need for the

22   legal theories which [Shellpoint] currently seems to focus upon."  (ECF No. 71 at 14).  Shellpoint

23   rejected this proposal.

24        In its briefings, Shellpoint points out that alter ego and aiding and abetting are not theories

25   of *recovery* but are theories of *liability* on which it is entitled to conduct discovery.  (ECF Nos.

26   86, 87, 88, 90, 119).  Shellpoint seeks to support its claim that the Haddad Entities worked

27   together to manipulate the legal process to delay Shellpoint's foreclosure and so, Shellpoint's

28   discovery regarding the relationships between the parties is relevant.  (ECF No. 86 at 10).

1   Shellpoint also argues that Haddad Entities' generic arguments that the discovery is

2   disproportional are insufficient to support their request for a protective order.  (*Id.* at 11-15).

3   Regarding the Haddad Entities' proposed solution of posting a bond, Shellpoint argues that the

4   Haddad Entities are trying to buy their way out of discovery and "deprive Shellpoint of needed

5   discovery in exchange for a bond that it is unlikely that [the Haddad Entities] would ever have to

6   satisfy because they will have avoided producing the information that Shellpoint needs to prove

7   its claims at trial."  (ECF No. 121 at 4).

8   **I.      The Haddad Entities do not support their request for a protective order.**

9         A party seeking to avoid discovery may seek a protective order.  Fed. R. Civ. P. 26(c).

10   The party seeking to avoid discovery bears the burden of showing why that discovery should not

11   be permitted.  *V5 Techs. V. Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev. 2019) (citing *Blankenship*

12   *v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).  The party resisting discovery must

13   specifically detail the reasons why each request is irrelevant or otherwise objectionable, and may

14   not rely on boilerplate, generalized, conclusory, or speculative arguments.  *F.T.C. v. AMG Servs.,*

15   *Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013).  Arguments against discovery must be supported by

16   "specific examples" and "articulated reasoning."  *E.E.O.C. v. Caesars Ent.*, 237 F.R.D. 428, 432

17   (D. Nev. 2006).  "All motions…for a protective order must set forth in full the text of the

18   discovery originally sought and any response to it."  LR 26-6(b).  "Discovery motions will not be

19   considered unless the movant…includes a declaration setting forth the details and results of the

20   meet-and-confer conference about each disputed discovery request."  LR 26-6(c).  "[B]road

21   discretion is vested in the trial court to permit or deny discovery."  *Hallett v. Morgan*, 296 F.3d

22   732, 751 (9th Cir. 2002).

23         Here, the Haddad Entities have not met their burden of showing why Shellpoint's

24   discovery should not be permitted.  Instead of specifically detailing the reasons why each request

25   is irrelevant or otherwise objectionable, the Haddad Entities rely entirely on boilerplate,

26   generalized, conclusory, and speculative arguments.  While they provide some examples of the

27   discovery requests they find objectionable, they do not provide articulated reasoning about why

28   those specific examples or the discovery of which they are exemplary are objectionable.  The

1    Haddad Entities simply argue that Shellpoint's requests for production constitute "a blanket

2    approach seeking voluminous material, for 12 years, from all of the defendants" without

3    explaining how the requests are disproportional or why obtaining the responsive information

4    would be unduly burdensome. (ECF No. 71 at 11).  Similarly, while the Haddad Entities explain

5    why they believe one interrogatory's terms are vague, they do not address the terms of other

6    interrogatories. (*Id.* at 12).  They also argue in conclusory fashion that the interrogatories are

7    "burdensome and oppressive." (*Id.*).  The Haddad Entities do not even provide their objections

8    and responses to these discovery requests as required by the local rule and do not explain the

9    results of their meet and confer conference regarding each request.

10           The Haddad Entities' arguments regarding why the Court should not permit Shellpoint's

11   discovery almost entirely consist of their assertion that the discovery is "irrelevant."  They argue

12   that Shellpoint's discovery requests—directed as they are to alter ego and aiding and abetting—

13   are irrelevant because Judge Dorsey determined that alter ego and aiding and abetting are theories

14   of liability rather than stand alone claims.  But the Haddad Entities provide no authority for their

15   argument that a party may not conduct discovery regarding a theory of liability.  The Haddad

16   Entities fail to carry their burden of showing why the Court should not permit Shellpoint's

17   discovery and the Court denies their motion for protective order.

18   **II.      Shellpoint has supported its motion to compel.**

19           When a party fails to provide discovery, the requesting party may move to compel it.  Fed.

20   R. Civ. P. 37(a).  The party seeking to compel discovery responses must make a threshold

21   showing that the discovery sought is relevant.  *See Nugget Hydroelectric, L.P. v. Pac. Gas &*

22   *Elec. Co.*, 981 F.2d 429, 438-39 (9th Cir. 1992); *Tsatas v. Airborne Wireless Network*, No. 2:20-

23   cv-02045-RFB-BNW, 2022 WL 74003, at *2 (D. Nev. Jan. 7, 2022).  This is a relatively low

24   threshold, and merely requires the possibility of a nexus between the information sought and the

25   claims or defenses of a party.  *Tsatas*, 2022 WL 74003, at *2.

26           Once relevancy has been shown, or if relevancy is plain from the face of the request, the

27   party who is resisting discovery has the burden to show that discovery should not be allowed.

28   *Blankenship*, 519 F.2d at 429.  The party resisting discovery must specifically detail the reasons

1    why each request is irrelevant or otherwise objectionable, and may not rely on boilerplate,

2    generalized, conclusory, or speculative arguments. *F.T.C.*, 291 F.R.D. at 553. "Boilerplate,

3    generalized objections are inadequate and tantamount to not making any objection at all." *Tsatas*,

4    2022 WL 74003, at *2 (citing *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587

5    (C.D. Cal. 1999)).

6         Here, Shellpoint has made a threshold showing that the discovery it seeks is relevant.

7    Shellpoint breaks its requests into six categories: (1) the Haddad Entities' formation, structure,

8    governance, and operations; (2) the Haddad Entities' relationships with the Haddad family and

9    other Haddad entities; (3) the Haddad Entities' financial records including financial records

10   related to the property at issue; (4) documents related to the property and the deed of trust;

11   (5) documents related to other legal proceedings; and (6) legal services provided by Roger

12   Croteau. (ECF No. 90 at 17). For each category of requests, Shellpoint provides the specific

13   requests, the Haddad Entities' responses, and an explanation about why that category of request is

14   relevant to its case. (*Id.* at 17-48). Shellpoint also provided a declaration setting forth the details

15   and results of its counsel's meet and confer efforts. (ECF No. 92). Shellpoint has met the low

16   threshold of showing a nexus between the information it seeks and its claims.

17        The Haddad Entities, on the other hand, have not met their burden of showing that

18   Shellpoint's discovery should not be allowed. The Haddad Entities' arguments are entirely

19   conclusory, claiming that Shellpoint's discovery—as a whole and without reference to any

20   specific request—is "irrelevant." (ECF No. 101 at 9, 12-13). They also claim that the

21   discovery—again, as a whole—is disproportional to the case, making broad strokes and

22   conclusory arguments. (*Id.* at 13-17). But these boilerplate, speculative arguments are

23   tantamount to making no objection at all.

24        Additionally, much of the Haddad Entities' response to Shellpoint's motion centers on the

25   Haddad Entities' assertion that Shellpoint's claims are without merit. They assert that "[t]he most

26   efficient way to move this case forward to final resolution is for the parties to brief, and the Court

27   to decide, the [Haddad Entities'] soon to be filed Motion for Summary Judgment." (ECF No. 101

28   at 4). They then proceed to describe the arguments in their soon-to-be-filed motion for summary

1   judgment, asserting that Shellpoint should not be allowed to pursue discovery because the motion

2   for summary judgment "will demonstrate that Shellpoint's remaining claims are without merit."

3   (*Id.* at 10-12, 13-15).  But the Haddad Entities provide no authority that they can resist responding

4   to discovery relevant to Shellpoint's claims—which have passed a motion to dismiss—on the

5   speculative ground that they will file a motion for summary judgment at some point in the future.

6   Because Shellpoint has met its burden of making a threshold showing that the discovery it seeks

7   is relevant, and because the Haddad Entities have not met their burden of demonstrating why

8   discovery should not be allowed, the Court grants Shellpoint's motion to compel.

9   **III.    The Court denies the Haddad Entities' motion to stay or bifurcate as moot.**

10          The Haddad Entities move to stay certain discovery "until such time as the Motion for

11   Protective Order is heard and decided."  (ECF No. 72).  Because the Court has determined the

12   Haddad Entities' motion for protective order, it denies their motion to stay or bifurcate as moot.

13   **IV.    The Court grants the Haddad Entities' motion to extend time.**

14          The Haddad Entities move to extend the time for them to respond to Shellpoint's

15   interrogatories and requests for admission, which responses were originally due September 3,

16   2024, "until such time as the Motion for Protective Order is heard and decided…"  (ECF No. 73).

17   Shellpoint opposes the motion, arguing in part that the Haddad Entities have not shown good

18   cause and that the Haddad Entities have not shown why their motion for protective order—which

19   only addresses some discovery requests—warrants an extension for all discovery.  (ECF No. 88).

20   The Haddad Entities reply that, despite the fact that their motion for protective order only

21   mentioned certain exemplar discovery requests, they sought a protective order over all discovery,

22   constituting good cause to extend their responses.  (ECF No. 100).

23          The Court may, for good cause, extend time.  Fed. R. Civ. P. 6(b).  Under Federal Rule of

24   Civil Procedure 37(d)(2), a party's failure to respond to interrogatories is excused if the party

25   failing to act has a pending motion for protective order.  Under Federal Rule of Civil Procedure

26   36(a)(3), a matter is admitted if a party fails to respond to a request for admission within thirty

27   days of being served, unless the Court orders a longer time period.

28

1    Here, although the Court has denied the Haddad Entities' motion for protective order and

2    to stay discovery, it finds that their motion for protective order constitutes good cause to extend

3    the time for the Haddad Entities to respond to Shellpoint's interrogatories and requests for

4    admission. The Court thus grants the motion. The Haddad Entities shall have until December 20,

5    2024 to respond to Shellpoint's interrogatories and requests for admission.

6    **V.    <u>Shellpoint's motion for protective order is moot.</u>**

7    Shellpoint moves for a protective order to govern the parties' exchange of information.

8    (ECF No. 91). However, the parties have since filed a stipulated protective order. (ECF No.

9    118). Shellpoint then filed a notice of withdrawal of its motion for protective order. (ECF No.

10    120). The Court thus denies Shellpoint's motion for protective order as moot and will address the

11    parties' stipulated protective order in a separate order.

12    **VI.    <u>The Court will hear the remaining motions at the November 25, 2024, hearing.</u>**

13    The remaining motions (ECF Nos. 93, 108, and 112) will be heard at the November 25,

14    2024, hearing.

15

16    **IT IS THEREFORE ORDERED** that the Haddad Entities' motion for protective order

17    (ECF No. 71) and motion to stay discovery (ECF No. 72) are **denied.**

18    **IT IS FURTHER ORDERED** that the Haddad Entities' motion to extend time (ECF No.

19    73) is **granted.** The Haddad entities shall have until **December 20, 2024,** to respond to

20    Shellpoint's interrogatories and requests for admission.

21    **IT IS FURTHER ORDERED** that Shellpoint's countermotion to compel (ECF No. 90)

22    is **granted.**

23    **IT IS FURTHER ORDERED** that Shellpoint's countermotion for protective order (ECF

24    No. 91) is **denied as moot.**

25

26    DATED: November 20, 2024

27    _____

28    DANIEL J. ALBREGTS
      UNITED STATES MAGISTRATE JUDGE